UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO PICAZO,<br><br>          Plaintiff,<br><br>     v.<br><br>APTOS BERRY FARMS, INC., et al.,<br><br>          Defendants. | Case No.  23-cv-02735-SVK<br><br>**ORDER ON<br>MOTIONS TO DISMISS<br>FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 21, 24 |

Plaintiff Ricardo Picazo d/b/a Salinas Farms entered into a contract with Defendant Aptos Berry Farms, Inc. ("Aptos") under which the two coordinated to farm strawberries that Defendant Driscoll's, Inc. ("Driscoll's") later sold. Pursuant to that contract, Plaintiff and Aptos split between them a portion of the sales proceeds. Believing that he received less than he earned under the contract, Plaintiff brings this action to (1) compel Defendants to provide him an accounting of the money he earned under the contract and (2) recover any money that remains due.

Defendants Aptos and Driscoll's each now move to dismiss Plaintiff's first amended complaint (the "FAC" at Dkt. 16). *See* Dkts. 21 (the "Aptos Motion"), 24 (the "Driscoll's Motion") (collectively, the "Motions"). Plaintiff opposes the Motions. *See* Dkts. 29 (the "Aptos Opposition"), 30 (the "Driscoll's Opposition"). Defendants filed replies. *See* Dkts. 31, 32. All necessary parties—Plaintiff, Aptos and Driscoll's—have consented to the jurisdiction of a magistrate judge.[1] *See* Dkts. 7, 12, 15.

After considering the Parties' briefing, relevant law and the record in this action, and for

---

[1] In addition to Aptos and Driscoll's, Plaintiff also sued 20 Doe defendants. *See* FAC ¶ 6. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir. 2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).

the reasons that follow, the Court **GRANTS** the Motions and **DISMISSES** all of Plaintiff's claims with **LEAVE TO AMEND**.

I. **BACKGROUND**

The following discussion of background facts is based on the allegations contained in the FAC, the truth of which the Court accepts for purposes of resolving the Motions. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022). Plaintiff operates a farming business. *See* FAC ¶ 3. In the late summer of 2020, a representative of Aptos contacted Plaintiff, representing Aptos as "an agent and partner of Driscoll's," and solicited Plaintiff to assist Aptos in growing and harvesting a crop of strawberries for Driscoll's for the 2021 harvest season. *See id.* ¶ 8. Under the arrangement (the "Oral Contract"), Plaintiff and Aptos would divide the farming responsibilities and share in a portion of the sales proceeds ultimately received by Driscoll's, which included a "per crate Pick and Pack Advance to Plaintiff upon" delivery of the strawberries, "prior to distribution of sales proceeds." *See id.* Neither Plaintiff nor Aptos would participate in the marketing and selling of the strawberries. *See id.* ("[Plaintiff] was also told that Driscoll's would cool, market and sell the Strawberries . . . ."). A representative of Aptos subsequently memorialized "the general terms of the deal" in a text message sent to Plaintiff on September 14, 2020. *See id.* ¶ 9; *id.*, Ex. 1. Plaintiff and Aptos did not execute a written agreement at that time, and Driscoll's did not begin communicating with Plaintiff until later in November 2020. *See id.* ¶¶ 10, 13.

Over the next few months, Driscoll's delivered the strawberry plants and the farming commenced, with Driscoll's routinely inspecting the operation to ensure satisfaction of its standards. *See id.* ¶¶ 13-21. Harvesting then began in March 2021. *See id.* ¶ 22. At that time, Aptos paid Plaintiff his first Pick and Pack Advance, although it paid Plaintiff $2.35 per crate less than the amount set under the Oral Contract. *See id.* These reduced payments persisted for the remainder of the season. *See id.* ¶ 23.

After a few months of Aptos not sufficiently explaining these and other deductions taken on payments remitted to Plaintiff, Aptos and Plaintiff executed a "Patent Sublicense and Subcontract for Growing Non-Organic Strawberry Crop" on or around June 7, 2021 (the "Written

2

Contract" at *id.*, Ex. 18). *See id.* ¶¶ 24-38. The Written Contract bears an effective date of October 1, 2020 and does not identify Driscoll's as a party or signatory to the agreement. *See* Written Contract at 18-1, 18-6. Instead, the Written Contract identifies Driscoll's as a third-party beneficiary to the agreement. *See id.* at 18-7. The Written Contract also provides for "pooling" of Plaintiff and Aptos's crop of strawberries with other farmers' crops of strawberries for purposes of determining the portion of sales proceeds owed to Plaintiff. *See id.* at 18-10, 18-20. Lastly, the Written Contract expressly supersedes the Oral Contract via an integration clause:

> *Integration; Sole and Only Agreement.* This Agreement integrates all of the terms and conditions mentioned herein or incidental thereto, and supersedes all prior or subsequent oral negotiations, agreements or promises and prior writings in respect to the subject matter hereof, and may be amended only by a writing executed by both Parties hereto.

*Id.* at 18-17.

Several months after the end of the 2021 harvest season, Plaintiff had still not received a complete explanation of (1) all the sales generated from his crop of strawberries, (2) how Driscoll's and Aptos had calculated the payments made to Plaintiff and (3) why Driscoll's and Aptos had deducted certain amounts from those payments. *See* FAC ¶¶ 47-52. Only after Plaintiff sent Defendants a demand letter in December 2022 did he finally receive an accounting from Aptos that set forth, on a pooling basis, the relevant payments and deductions. *See id.* ¶¶ 53-58.

Unsatisfied with the explanation provided in Aptos's accounting, and convinced Driscoll's and Aptos had not paid all the sales proceeds owed to him, Plaintiff commenced this action on June 1, 2023, asserting, *inter alia*, claims for breaches of the Oral Contract and the Written Contract. *See* Dkt. 1. Plaintiff then filed the FAC on July 12, 2023, replacing his breach-of-contract claims with claims under federal and state statutes and further asserting state-law claims of conversion and accounting. *See* FAC ¶¶ 61-100.

///
///

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in his favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020).[2]

## III. DISCUSSION

Plaintiff asserts four causes of action in the FAC (*see* FAC ¶¶ 65-100):

- **Cause Of Action One:** Violation of the Perishable Agricultural Commodities Act (the "PACA") and the California Food and Agricultural Code (the "CFAC") stemming from the transaction memorialized by the Oral Contract.

- **Cause Of Action Two:** Violation of the PACA and the CFAC stemming from the

---

[2] Defendants move to dismiss Plaintiff's claims under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Aptos Motion at 3; Driscoll's Motion at 1. Because the Court concludes that Rule 12(b)(6) compels dismissal of all of Plaintiff's claims, it does not separately evaluate Plaintiff's claims under Rule 12(b)(1). *See also* Section III.B, *infra* (discussing Court's jurisdiction).

4

transaction memorialized by the Written Contract.

- **Cause Of Action Three:** Conversion for failure to pay Plaintiff all amounts owed to him.
- **Cause Of Action Four:** Accounting for all amounts owed to Plaintiff.

None of these claims survive scrutiny under Rule 12(b)(6).

### A. Federal-Law Claims: Plaintiff's PACA Claims Fail

Plaintiff alleges that Defendants violated Section 499b(4) of the PACA, which declares unlawful "[f]or any commission merchant, dealer, or broker . . . to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any [agricultural] commodity to the person with whom such transaction is had." 7 U.S.C. § 499b(4). Under the allegations contained in the FAC, neither Aptos nor Driscoll's violated this provision.

#### 1. Section 499b(4) Does Not Apply To Aptos

Section 499b(4) regulates the conduct of only commission merchants, dealers and brokers. *See id.* Thus, to state a claim against Aptos, Plaintiff must sufficiently allege that Aptos falls into one of these three categories. *See, e.g.*, *Mastronardi Int'l Ltd. v. Sunselect Produce (Cal.), Inc.*, No. 18-cv-00737-AWI, 2018 WL 5262599, at *6 (E.D. Cal. Oct. 19, 2018) ("Mastronardi's unfair conduct claims under [Section 499b] subsections (2) and (4) are not viable if SunSelect is neither a dealer, commission merchant, nor broker."). Plaintiff has not done so.

##### a. Plaintiff Does Not Sufficiently Allege That Aptos Operates As Either A Commission Merchant, Dealer Or Broker

Plaintiff concludes, without alleging supporting facts, that "Aptos is in the business of growing, harvesting, marketing, and selling of perishable agricultural commodities in interstate commerce." FAC ¶ 5. But while his more-detailed allegations support a determination that Aptos grows and harvests agricultural commodities, they do not support a determination that Aptos markets or sells agricultural commodities—nowhere in the FAC does Plaintiff refer to a single instance in which Aptos did so. *See Martorello v. Sun Life Assurance Co. of Can.*, No. 09-cv-00912-PJH, 2009 WL 2160652, at *1 (N.D. Cal. July 20, 2009) ("[T]he Supreme Court has been clear that conclusory allegations unsupported by proper factual allegations do not meet the requisite threshold to defeat a motion to dismiss." (citations omitted)); *see, e.g.*, *Ali v. Silicon*

5

*Valley Bank*, No. 18-cv-03999-JSW, 2019 WL 8752054, at *2 (N.D. Cal. Jan. 28, 2019) (rejecting allegations in complaint as "purely speculative and unsupported by any substantive facts"). Indeed, Driscoll's is the only party that Plaintiff alleges maintained any involvement in marketing or selling.  *See, e.g.*, FAC ¶¶ 8 ("[Plaintiff] was also told that Driscoll's would cool, market and sell the Strawberries . . . ."), 42 ("The General Provisions of the [Written Contract] authorize Driscoll's to be the exclusive marketer for the Strawberries . . . ."); *see also* Aptos Opposition at 16 ("It is undisputed that Driscoll's marketed and sold the Strawberries grown by the Plaintiff.").

Because Aptos acts solely as a grower and harvester of agricultural commodities (*i.e.*, as a farmer), it does not satisfy the statutory definitions of commission merchant, dealer or broker:

- "The term 'commission merchant' means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(5).  Plaintiff does not sufficiently allege that Aptos receives agricultural commodities for purposes of making sales on commission or for or on behalf of others.
- "The term 'dealer' means any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce . . . ." *Id.* § 499a(6).  Plaintiff does not sufficiently allege that Aptos buys or sells agricultural commodities.
- "The term 'broker' means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser . . . ." *Id.* § 499a(7).  Plaintiff does not sufficiently allege that Aptos negotiates the sale and purchase of agricultural commodities.

///
///
///
///
///
///

### b. Plaintiff Does Not Sufficiently Allege That Aptos Acted As Driscoll's' Agent

In the alternative, Plaintiff argues that the PACA applies to Aptos because Aptos acted as an agent of Driscoll's, which is licensed as either a commission merchant, dealer or broker under the PACA. *See* Aptos Opposition at 16-18; FAC ¶ 4. Between the FAC and the Aptos Opposition, he offers five assertions in support of this theory of agency:

- When Aptos first contacted Plaintiff, its representative allegedly identified the company as "an agent and partner of Driscoll's." FAC ¶ 8.
- The "only manner" in which the Written Contract would identify Driscoll's as a third-party beneficiary "without explanation as to how Driscoll's could legally undertake the obligation to market and sell the Strawberries for [Plaintiff], and then account for the sales and remit proceeds thereof without being a signatory . . . is if Aptos was acting as Driscoll's authorized agent." *Id.* ¶ 40.
- Because "Aptos was not licensed under [the] PACA . . . to market and sell produce for or on behalf of [Plaintiff, it] . . . had no legal authority to enter into the [Oral Contract] with the Plaintiff for the sale of the Strawberries and the split of proceeds derived thereof except as an agent of the licensed entity, Driscoll's." *Id.* ¶ 67; *see also id.* ¶ 82 (same allegation with respect to Written Contract).
- Aptos could provide Plaintiff with an accounting of and remit to Plaintiff his portion of Driscoll's' sales only if Aptos acted as Driscoll's agent. *See* Aptos Opposition at 16-17.
- Driscoll's benefitted more than any other party from Aptos's solicitation and ensuing contractual relationship with Plaintiff. *See id.* at 17.

But these assertions do not support a determination at the pleadings stage that Aptos acted as Driscoll's' agent. Under California law,

> [t]here are two types of agency—actual and ostensible. Actual agency is based on *consent*, and turns on whether the principal has the right to control the agent's conduct. Ostensible agency is based on *appearances*, and turns on whether <u>the . . . principal</u> intentionally, or by want of ordinary care, causes a third person to believe another to be his agent even though the third person is not *actually* an agent.

*Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726-TSH, 2023 WL 3852696, at *4 (N.D. Cal. June 5, 2023) (underline emphasis added) (quotations marks and citations omitted).  None of Plaintiff's assertions allows the Court to reasonably infer that Driscoll's consented to Aptos acting as its agent, and none identifies an act by Driscoll's creating an appearance to Plaintiff that Driscoll's authorized Aptos to act on its behalf.

Rather, the only reasonable conclusion that the Court may reach about the relationship between the Parties is that Driscoll's hired Aptos as a contractor to farm its strawberries, and Aptos hired Plaintiff as a sub-contractor to assist it in farming the strawberries.  The Written Contract (which is titled "Patent Sublicense and Subcontract") all but confirms as much: "Sublicensor [*i.e.*, Aptos] possesses, under the terms of a valid Patent License and Agreement (the 'Driscoll's License'), the right to grow for the account of Driscoll's, Inc. ('Driscoll's') a crop from certain of Driscoll's varieties of patented strawberries for certain compensation, and may in turn sublicense this right."  Written Contract at 18-1 (emphasis added); *see also Van Hook v. Curry*, No. 06-cv-03148-PJH, 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings." (citations omitted)).

    c. *Plaintiff Does Not Sufficiently Allege That Aptos Acted As Driscoll's' Alter Ego*

Plaintiff and Aptos devote little attention in their briefing to whether the PACA applies to Aptos as an alter ego of Driscoll's, and the Court may dispense with the argument quickly.  *See* Aptos Motion at 9-11; Aptos Opposition at 18.  "Plaintiff admits that it has made primarily boiler plate allegations that APTOS and Driscoll's acted as each other's alter egos in their dealings with Plaintiff . . . ."  Aptos Opposition at 18; *see also* FAC ¶ 7 ("Plaintiff alleges upon information and belief that the Defendants, and each of them, were the . . . alter-egos . . . of each other, and in doing the things herein alleged, were acting within the scope, course, and purpose of said . . . alter-ego . . . .").  Plaintiff further admits that Aptos's status as an alter ego of Driscoll's "has no bearing on the merits of Plaintiff's claims."  Aptos Opposition at 18.

If Plaintiff does not wish to contest Aptos's argument that it did not act as Driscoll's' alter

8

ego, the Court will not linger on the issue. *Cf. Obeso v. Nat'l R.R. Passenger Corp.*, No. 23-cv-02793-SVK, 2023 WL 6278880, at *7 n.6 (N.D. Cal. Sept. 25, 2023) ("The Court trusts litigants to marshal forth their strongest arguments and evidence and will consider only those arguments and evidence presented."). Suffice it to say that Plaintiff's "one primary factor supporting its alter ego allegations, [the] common ownership and control" (Aptos Opposition at 18) of Aptos and Driscoll's, does not constitute a sufficient allegation of alter-ego theory. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) ("[I]t is well-settled that common ownership is not dispositive [of alter-ego status]." (citations omitted)); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) ("In assessing alter ego, . . . [c]ommon ownership alone is insufficient to disregard the corporate form." (citation omitted)).

        2.        Neither The Oral Contract Nor The Written Contract May Serve As A Basis For Plaintiff's PACA Claims Against Driscoll's

Section 499b(4) concerns failure to account and promptly pay "in respect of any transaction." 7 U.S.C. § 499b(4) (emphasis added). This provision contemplates a contractual transaction. *See Pac. Tomato Growers, Ltd. v. B.T. Produce Co.*, No. R-01-0095, 2001 WL 1891236, at *2 (U.S.D.A. May 23, 2001) ("Thus, the unlawfulness delineated in [PACA Section 499b] is intended to be in connection with contractual transactions."). Accordingly, to state a Section 499b violation, Plaintiff must tie the alleged violation to a contract. *Cf. id.* at *2-3 (dismissing Section 499b PACA complaint because "Complainant had no contractual connection with Respondent"). Here, Plaintiff asserts that the alleged PACA violations stem from two contracts: the Oral Contract and the Written Contract. *See* FAC ¶¶ 65-88. But neither agreement may serve as the basis for Plaintiff's PACA claims against Driscoll's.

///
///
///
///
///
///

### a. The Written Contract Supersedes The Oral Contract

Plaintiff alleges that he and Aptos entered into the Oral Contract in July or August 2020 and that a representative of Aptos sent him a text message "confirming the general terms of the deal" on September 14, 2020. *See* FAC ¶¶ 8-9. Plaintiff and Aptos then executed the Written Contract in June 2021 (*see id.* ¶ 37), which bears an effective date of October 1, 2020 and which expressly supersedes the Oral Contract via an integration clause (*see* Written Contract at 18-1, 18-17). However, none of the alleged PACA violations occurred until March 2021, which is <u>after</u> the effective date of the Written Contract. *See* FAC ¶ 22 (failure to account for reduced "Pick and Pack Advance" received in March 2021).

Because the alleged PACA violations occurred after the effective date of the Written Contract, any such violations would arise out of the Written Contract only. Two principles of California contract law necessitate this conclusion:

***First***, an integration clause extinguishes any previously existing contract, such that the prior contract may no longer serve as the basis for a claim. *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, No. 18-cv-07568-EMC, 2019 WL 4221599, at *8-9 (N.D. Cal. Sept. 5, 2019) (where integration clauses result in agreements superseding earlier contracts, plaintiff directed to plead claims "with reference to the superseding agreements"); *Adams v. United of Omaha Life Ins. Co.*, No. 12-cv-00969-JST, 2013 WL 12113224, at *4 (C.D. Cal. Apr. 24, 2013) (plaintiff may not base breach of contract claims on oral agreement superseded by written agreement containing integration clause).

***Second***, a contract's effective date may operate retroactively. *See Sharp v. Seven Arts Ent. Inc.*, No. D079648, 2022 WL 3366433, at *7 (Cal. Ct. App. 4th Dist. Div. 1 Aug. 16, 2022) ("The parties to a contract may set its effective date earlier than the date of execution." (citations omitted)); *Du Frene v. Kaiser Steel Corp.*, 231 Cal. App. 2d 452, 458 (4th Dist. 1964) ("[A] party of a contract may retroactively adopt prior acts or fix retroactive dates of execution for a contract." (citations omitted)); *see, e.g.*, *Am. Guarantee & Liab. Ins. Co. v. Lexington Ins. Co.*, 517 F. App'x 599, 602 (9th Cir. 2013) (Bea, J., concurring) (parties permissibly executed a contract with an effective date predating date of execution).

In light of these principles, Plaintiff may not predicate his PACA claims on the Oral Contract—the alleged violations occurred after the effective date of the Written Contract, and the Written Contract's integration clause terminated the Oral Contract. The fact that the alleged violations occurred before the Written Contract was executed is irrelevant, because the Written Contract's effective date of October 1, 2020 (*i.e.*, before the alleged violations occurred) operates retroactively.

*Du Frene* is instructive. There, the plaintiff leased two cranes to defendants pursuant to contracts dated May 9 and July 23. *See Du Frene*, 231 Cal. App. 2d at 454. Plaintiff also leased a third crane to defendants, but the May 9 and July 23 contracts did not encompass this lease. *See id.* An accident damaging the third crane occurred on November 6. The parties subsequently executed a third contract concerning lease of the third crane, which bore a retroactive effective date of November 4 (*i.e.*, two days before the accident occurred). *See id.*; *see also id.* at 459. The trial court held that a November 4 oral contract applied to the accident and that the subsequently executed written contract did not apply, because it was executed after the occurrence of the accident. *See id.* at 455-56. The California Court of Appeal reversed, holding that the subsequently executed written contract governed, because it bore a retroactive effective date that predated the date of the accident. *See id.* at 458-59.

The same principle applies here: the Written Contract bears an effective date predating the dates of the PACA violations, and accordingly, that agreement (and not the Oral Contract) governs.

          b.    *Plaintiff Does Not Enjoy Privity Of Contract With Driscoll's Under The Written Contract*

A Section 499b violation occurs where a party fails to account and promptly pay "in respect of any transaction in any [agricultural] commodity <u>to the person with whom such transaction is had</u>." 7 U.S.C. § 499b(4) (emphasis added). Because the PACA requires a contractual transaction, it follows that "the person with whom such transaction is had" refers to a party in contractual privity with a plaintiff. *See Pac. Tomato*, 2001 WL 1891236, at *2-3 (liability under Section 499b requires contractual privity).

11

Here, no such contractual privity exists between Plaintiff and Driscoll's, because Driscoll's is not a party to the Written Contract; Plaintiff entered into the Written Contract with Aptos only. *See* Written Contract at 18-1, 18-6; *McCormick v. US Bank, N.A.*, No. 12-cv-00433-AJB, 2012 WL 12869274, at *4 (N.D. Cal. Oct. 30, 2012) (privity exists between only parties to a contract). Plaintiff's agency and alter-ego theories fail to cure this deficiency. *See* Sections III.A.1.b-c, *supra* (insufficient allegations that Aptos acted as agent or alter ego of Driscoll's). Driscoll's' status as a third-party beneficiary under the Written Contract is also irrelevant. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to." (citations omitted)); *see, e.g.*, *Calise v. Hughes*, No. B213321, 2009 WL 2170544, at *3 (Cal. Ct. App. 2d Dist. Div. 6 July 21, 2009) (declining to bind third-party beneficiary to terms of contract).

Plaintiff responds that the doctrine of equitable estoppel prevents Driscoll's from avoiding liability as a result of its status as a third-party beneficiary, because Driscoll's "reap[ed] the benefits of [the Written Contract], but not the burdens." *See* Driscoll's Opposition at 23. His argument fails for three reasons:

**First**, Driscoll's' status as a third-party beneficiary cannot alone constitute an acceptance of the benefits of the Written Contract sufficient to require imposition of that agreement's burdens. To hold otherwise would vitiate the general rule that third-party beneficiaries are not bound under contracts to which they are not parties—indeed, they would become bound by all contracts to which they are not parties.

**Second**, Plaintiff has not alleged that Driscoll's accepted the benefits of the Written Contract. As explained by Plaintiff's own authority, in the context of equitable estoppel, accepting the benefits of a contract refers to a non-party's attempt to invoke provisions of the contract to their benefit (*e.g.*, suing under the contract). *See Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004) (equitable estoppel prevents a plaintiff from "suing based upon one part of a transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden"); *see, e.g.*,

12

*Comer*, 436 F.3d at 1102 (no equitable estoppel where non-party to contracts "did not seek to enforce the terms of the [contracts], nor otherwise to take advantage of them"). Plaintiff does not allege that Driscoll's sued under or otherwise attempted to avail itself of the terms of the Written Contract. And while the Written Contract allegedly obligated Plaintiff to "observe[] all of DRISCOLL'S standards in growing and harvesting" (Driscoll's Opposition at 23), those obligations merely confirm Driscoll's' status as a third-party beneficiary under the agreement. *See Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (4th Dist. Div. 2 2017) ("A third party beneficiary is someone who may enforce a contract <u>because the contract is made expressly for his benefit</u>." (emphasis added) (citation omitted)). They do not, however, constitute attempts by Driscoll's to invoke the benefits of the Written Contract.

**Third**, liability under the PACA does not constitute a "burden" under the Written Contract. In the context of equitable estoppel, a contractual burden refers to an obligation imposed by the contract; it does not refer to application of a statutory claim based on a contract. *See Bailey*, 364 F.3d at 267 ("[E]quitable estoppel . . . precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens <u>that contract imposes</u> as well." (emphasis added)). But Plaintiff does not seek to impose contractual obligations on Driscoll's and does not assert breach-of-contract claims in the FAC.[3] *See, e.g.*, *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1020 (N.D. Cal. 2011) ("Plaintiffs fail to plead facts showing that Bank of America breached those contracts. In other words, Plaintiffs have not explained <u>which contractual burdens</u> Bank of America is attempting to avoid." (emphasis added)).

\* \* \*

In sum, Plaintiff fails to state PACA claims against Aptos and Driscoll's. The relevant provision of the PACA does not apply to Aptos, and no agreement exists that may form the necessary contractual link to Driscoll's.

///

---

[3] Indeed, Plaintiff amended his original complaint and <u>removed</u> his breach-of-contract claims. *Compare* Dkt. 1 ¶¶ 51-71 (asserting breaches of Oral Contract and Written Contract), *with* FAC ¶¶ 65-88 (asserting PACA and CFAC violations in connection with Oral Contract and Written Contract).

### B.   State-Law Claims: Plaintiff's CFAC, Conversion And Accounting Claims Fail

Subject-matter jurisdiction in this action emanates solely from Plaintiff's federal PACA claims, which permit the Court to exercise federal-question jurisdiction. *See* 28 U.S.C. § 1331; *see also* FAC ¶ 1. Because the Court dismisses those federal claims, it would ordinarily decline to exercise supplemental jurisdiction over and comment on Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). However, because the Court will permit Plaintiff to amend his FAC, it addresses the deficiencies in Plaintiff's state-law allegations below, which he may correct in his amended pleading.

#### 1.   Section 56273 Of The CFAC Does Not Apply To Aptos, Driscoll's Or Plaintiff

As with his PACA claims, Plaintiff alleges in his CFAC claims that Aptos and Driscoll's failed to account and promptly pay him for the strawberries he harvested. *See* FAC ¶¶ 49, 62. However, the relevant provision of the CFAC obligates a "commission merchant" to provide an accounting and prompt payment to a "consignor." *See* CFAC § 56273. The CFAC defines those terms as follows:

- "Commission merchant" refers, generally, to an entity that receives, sells or otherwise "handles any farm product in any way" on commission or consignment. *See id.* § 56105.
- "Consignor" refers to "any person that ships or delivers to any commission merchant or dealer any farm product for handling, sale, or resale." *See id.* § 56106.

Under the allegations in the FAC, those definitions do not apply to Aptos, Driscoll's or Plaintiff.

Beginning with Aptos and Driscoll's, Plaintiff does not sufficiently allege that those entities' businesses involve commission or consignment. Indeed, here, Aptos simply farmed strawberries that Driscoll's would ultimately sell. *See* Section III.A.1.a, *supra*. Nowhere does Plaintiff allege that either Defendant sold the strawberries on commission or held the strawberries on consignment. Thus, neither satisfies the definition of commission merchant.

Turning to Plaintiff, the CFAC defines consignor with reference to commission merchants and dealers; an entity acts as a consignor by shipping or delivering farm products to a commission merchant or dealer. As discussed above, Aptos and Driscoll's do not satisfy the definition of commission merchant. Neither do they satisfy the definition of dealer. The CFAC defines a

14

dealer as "any person who obtains title to, or possession, control, or delivery of, any farm product from a licensee or producer at a designated price for the purpose of resale, or who buys or agrees to buy any farm product from a licensee or the producer of the farm product at a designated price." CFAC § 56107.  Plaintiff does not allege that he delivered the strawberries to Aptos or Driscoll's "at a designated price for the purpose of resale" or that Aptos or Driscoll's "b[ought] or agree[d] to buy" the strawberries from him.

Because the Parties do not constitute commission merchants or consignors under the CFAC, Plaintiff's CFAC claims fail.  *Cf. Fantozzi Bros. v. San Joaquin Tomato Growers, Inc.*, 201 Cal. App. 4th 330, 333-35 (5th Dist. 2011) (affirming decision of trial court not to instruct jury regarding duties of commission merchants under CFAC after determining defendant did not satisfy definition of commission merchant).

2. No Sufficient Right To Receive Payment Predicates Plaintiff's Conversion Claim

"Under California law, conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with his rights in the property." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citations omitted).  Here, Plaintiff does not sufficiently allege a right to receive the payments he seeks.  No statutory right exists, because Plaintiff's PACA and CFAC claims fail.  And to the extent a contractual right exists (under either the Oral Contract or the Written Contract), such contractual rights alone cannot form the basis of a conversion claim. *See Voris v. Lampert*, 7 Cal. 5th 1141, 1151-52 (2019) ("[T]he simple failure to pay money owed does not constitute conversion.  Were it otherwise, the tort of conversion would swallow the significant category of contract claims that are based on the failure to satisfy mere contractual right[s] of payment." (quotation marks and citations omitted)); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 233 (6th Dist. 2014) ("'[A] mere contractual right of payment, without more, will not suffice' to support a claim for conversion." (citation omitted)).

///

///

///

### 3. Plaintiff's Accounting Claim Is Moot

Plaintiff admits Aptos has already provided him an accounting for the 2021 harvest season. *See* FAC ¶ 57 ("In December of 2022, after the Demand Letter was sent, Aptos finally provided [Plaintiff] with an accounting for the Season which for the first time showed the gross amount of sales proceeds received by Driscoll's from the sale of fresh Strawberries grown on the Ranch *on a pooled basis*, but not on an individual basis."). This admission moots his accounting claim. *See, e.g.*, *Home Gambling Network, Inc. v. Piche*, No. 05-cv-00610-DAE, 2013 WL 5492568, at *10 (D. Nev. Sept. 30, 2013) ("Additionally, the Court notes that, since the information sought by Plaintiffs is contained in the database produced to Plaintiffs, Plaintiffs' request for an accounting appears to be moot.").

Plaintiff disputes the sufficiency of Aptos's accounting only to the extent that it calculates certain amounts owed to him based on the terms of the Written Contract; he asserts that for the amounts earned prior to the execution of the Written Contract, the terms of the Oral Contract governed. *See* FAC ¶¶ 57-60. Specifically, Aptos's accounting calculates revenue on a pooled basis, but only the Written Contract permits pooling. *See id.* ¶ 57. Similarly, Aptos's accounting indicates that Driscoll's deducted for itself a fee from the revenues it earned before calculating the portion of the remaining earnings owed to Plaintiff, but "Plaintiff was never told that Driscoll's would be deducting [such] fees" until execution of the Written Contract, "which disclosed that fees would be paid to Driscoll's." *See id.* ¶¶ 58-59. As discussed above, however, the Written Contract supersedes the Oral Contract. *See* Section III.A.2.a, *supra*. Plaintiff therefore may not base an accounting claim on the requirements of the superseded Oral Contract.

///
///
///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motions and **DISMISSES** all of Plaintiff's claims with **LEAVE TO AMEND**. Plaintiff must file an amended complaint by **November 23, 2023**. The Court will dismiss this action if Plaintiff fails to file an amended complaint by the deadline.

**SO ORDERED.**

Dated: November 2, 2023

_____
SUSAN VAN KEULEN
United States Magistrate Judge