UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO PICAZO,<br><br>    Plaintiff,<br><br>v.<br><br>APTOS BERRY FARMS, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02735-SVK<br><br>**ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 48, 49 |

Non-diverse parties litigating solely state-law claims do not have access to the federal courts. Perhaps for that reason, California Plaintiff Ricardo Picazo d/b/a Salinas Farms voluntarily amended his original complaint, in which he asserted only state-law claims against California Defendants Aptos Berry Farms, Inc. ("Aptos") and Driscoll's, Inc. ("Driscoll's"), to add federal-law claims under the Perishable Agricultural Commodities Act (the "PACA"). The Court dismissed Plaintiff's first amended complaint (the "FAC") because, *inter alia*, Plaintiff failed to state a claim under the PACA. *See* Dkt. 43 (the "FAC Order"). Following that dismissal, Plaintiff filed a second amended complaint, which primarily expands Plaintiff's discussion of the PACA. *See* Dkt. 45 (the "SAC"). Still, the square peg of Plaintiff's allegations does not fit into the round hole that is the PACA. His fundamental allegations, insufficient to state a claim under the PACA, remain the same.

In brief: Plaintiff entered into a contract with Aptos under which the two coordinated to farm strawberries that Driscoll's later sold. Pursuant to that contract, Plaintiff and Aptos split between them a portion of the sales proceeds. Believing that he received less than he earned under the contract, Plaintiff brings this action to (1) compel Defendants to provide him an accounting of the money he earned under the contract and (2) recover any money that remains due.

Aptos and Driscoll's each now move to dismiss the SAC. *See* Dkts. 48, 49 (collectively,

the "Motions"). Plaintiff opposes the Motions. *See* Dkts. 52, 53. Defendants filed replies. *See* Dkts. 54, 55. All necessary parties—Plaintiff, Aptos and Driscoll's—have consented to the jurisdiction of a magistrate judge.[1] *See* Dkts. 7, 12, 15. The Court has determined that the Motions are suitable for resolution without oral argument. *See* Civil Local Rule 7-1(b). After considering the Parties' briefing, relevant law and the record in this action, and for the reasons that follow, the Court **GRANTS** the Motions and **DISMISSES** the SAC **WITHOUT LEAVE TO AMEND**.

I.  **BACKGROUND**

The following discussion of background facts is based on the allegations contained in the SAC, the truth of which the Court accepts for purposes of resolving the Motions. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022). Plaintiff operates a farming business. *See* SAC ¶ 3. In the late summer of 2020, a representative of Aptos contacted Plaintiff, representing Aptos as "an agent and partner of Driscoll's," and solicited Plaintiff to assist Aptos in growing and harvesting a crop of strawberries for Driscoll's for the 2021 harvest season. *See id.* ¶ 11. Under the arrangement (the "Oral Contract"), Plaintiff and Aptos would divide the farming responsibilities and share in a portion of the sales proceeds ultimately received by Driscoll's, which included a "per crate Pick and Pack Advance to Plaintiff upon" delivery of the strawberries, "prior to distribution of sales proceeds." *See id.* Plaintiff "was [also] told from the outset of the Oral Contract . . . that all three parties (Plaintiff, Aptos and Driscoll's) would participate and work together to get the Strawberries planted, grown, harvested, marketed and sold." *Id.* ¶ 16. But neither Plaintiff nor Aptos would participate in the marketing and selling of the strawberries. *See id.* ¶ 11 ("[Plaintiff] was also told that Driscoll's would cool, market and sell the Strawberries . . . ."). A representative of Aptos subsequently memorialized "the general terms of the deal" in a text message sent to Plaintiff on September 14, 2020. *See id.* ¶ 12; *id.*, Ex. 1. Plaintiff and Aptos did

---

[1] In addition to Aptos and Driscoll's, Plaintiff also sued 20 Doe defendants. *See* SAC ¶ 9. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir. 2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).

not execute a written agreement at that time, and Driscoll's did not begin communicating with Plaintiff until later in November 2020. *See id.* ¶¶ 13, 17.

Over the next few months, Driscoll's delivered the strawberry plants and the farming commenced, with Driscoll's routinely inspecting the operation to ensure satisfaction of its standards. *See id.* ¶¶ 17-25. Harvesting then began in March 2021. *See id.* ¶ 26. At that time, Aptos paid Plaintiff his first Pick and Pack Advance, although it paid Plaintiff $2.35 per crate less than the amount set under the Oral Contract. *See id.* These reduced payments persisted for the remainder of the season. *See id.* ¶ 27.

After a few months of Aptos not sufficiently explaining these and other deductions taken on payments remitted to Plaintiff, Aptos and Plaintiff executed a "Patent Sublicense and Subcontract for Growing Non-Organic Strawberry Crop" on or around June 7, 2021 (the "Written Contract" at *id.*, Ex. 18). *See id.* ¶¶ 28-41. The Written Contract bears an effective date of October 1, 2020, is governed by California law and does not identify Driscoll's as a party or signatory to the agreement. *See* Written Contract at 18-1, 18-6, 18-17. Instead, the Written Contract identifies Driscoll's as a third-party beneficiary to the agreement. *See id.* at 18-7. In that vein, the Written Contract obligates Plaintiff and Aptos to comply with certain standards set by Driscoll's, who enjoys discretion under the agreement to control the sale and marketing of the strawberries. *See id.* at 18-7 through 18-9. The Written Contract also clarifies that (1) Plaintiff and Aptos "ha[ve] no title to the [strawberry p]lants or crop" (*see id.* at 18-1), and (2) the transaction memorialized by the agreement does not constitute a joint venture:

> *No Joint Venture.* This agreement does not create a joint venture or a partnership, nor does it grant to [Plaintiff], any right, claim, or interest in and to the Land, any of the Plants grown thereon, or any Berries grown therefrom; and it is further distinctly understood that [Plaintiff] is an independent contractor and is in no sense the representative, servant or employee of [Aptos] or of [Driscoll's].

*Id.* at 18-16. Lastly, the Written Contract expressly supersedes the Oral Contract via an integration clause:

> *Integration; Sole and Only Agreement.* This Agreement integrates all of the terms and conditions mentioned herein or incidental thereto, and supersedes all prior or subsequent oral negotiations, agreements or promises and prior writings in respect to the subject matter hereof, and may be amended only by a writing executed by both Parties hereto.

*Id.* at 18-17.

Several months after the end of the 2021 harvest season, Plaintiff had still not received a complete explanation of (1) all the sales generated from his crop of strawberries, (2) how Driscoll's and Aptos had calculated the payments made to Plaintiff and (3) why Driscoll's and Aptos had deducted certain amounts from those payments. *See* SAC ¶¶ 53-58. Only after Plaintiff sent Defendants a demand letter in December 2022 did he finally receive an accounting from Aptos that set forth, on a pooling basis, the relevant payments and deductions. *See id.* ¶¶ 59-64.

Unsatisfied with the explanation provided in Aptos's accounting, and convinced Driscoll's and Aptos had not paid all the sales proceeds owed to him, Plaintiff commenced this action on June 1, 2023, asserting, *inter alia*, claims for breaches of the Oral Contract and the Written Contract. *See* Dkt. 1. Plaintiff then filed the FAC on July 12, 2023, replacing his breach-of-contract claims with, *inter alia*, claims under the PACA. *See* Dkt. 16. After the Court dismissed the FAC with leave to amend (*see* FAC Order), Plaintiff filed the SAC, supplementing his PACA allegations and re-asserting his breach-of-contract claims. *See* SAC ¶¶ 67-104.

## II.   LEGAL STANDARD

Defendants move to dismiss the SAC under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Rule 12(b)(1).**  Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject-matter jurisdiction over the claims asserted. A defendant can challenge a court's subject-matter jurisdiction under Rule 12(b)(1) by launching either (1) a facial attack based solely on the allegations of the complaint or (2) a factual attack based on evidence outside the pleadings. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**Rule 12(b)(6).**  Under Rule 12(b)(6), a court must dismiss a complaint if it "fail[s] to state

4

a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

### III.   DISCUSSION

Plaintiff asserts one cause of action under federal law—his PACA claim—which the Court dismisses under Rule 12(b)(6). His remaining claims arise under state law, and because the Court dismisses Plaintiff's sole federal-law claim, it declines to exercise supplemental jurisdiction over his state-law claims. In the absence of such supplemental jurisdiction, the Court lacks subject-matter jurisdiction over Plaintiff's state-law claims, which mandates dismissal of those claims under Rule 12(b)(1).

///

///

///

///

### A. Plaintiff Does Not Sufficiently Allege That The Parties Entered Into A Joint Account Transaction

The Court begins by addressing the most substantive update to Plaintiff's pleading, namely, his assertion that the Parties' arrangement constitutes a "joint account transaction" under the PACA. *See, e.g.*, SAC ¶¶ 6, 16, 43-45. It is not clear how this characterization would impact Plaintiff's claims, but the Court need not dwell on the issue because Plaintiff has not sufficiently alleged the existence of a joint account transaction. Under the PACA, a joint account transaction refers to "a produce transaction in commerce in which two or more persons <u>participate under a limited joint venture arrangement</u> whereby they agree to share in a prescribed manner the costs, profits, or losses resulting from such transaction." 7 C.F.R. § 46.2(s) (emphasis added). Thus, a joint account transaction exists only where the parties to the transaction are already participating in a joint venture. A joint venture

> is based on an agreement—express, or implied from the parties' conduct—where: (1) the parties contribute money, property, effort or knowledge to a common undertaking; (2) there are joint property interests in the subject matter of the venture; (3) there is a right of mutual control or management of the venture; and, (4) the parties agree to share profits and losses of the venture.

*L&M Farms, Inc. v. Y2S Trading, Inc.*, No. R-07-072, 2010 WL 10078373, at *9 (U.S.D.A. June 30, 2010) (citation omitted).

Plaintiff does not sufficiently allege the existence of a joint venture; the Parties maintained no joint property interest in the subject matter of the venture, as Plaintiff and Aptos did not own the strawberry plants or crop, and the Parties maintained no right of mutual control or management of the venture, as the Written Contract (1) obligated Plaintiff and Aptos to comply with Driscoll's' standards and (2) afforded Driscoll's unilateral discretion to control the sale and marketing of the strawberries. The Written Contract also expressly confirms that the Parties did not intend to enter into a joint venture: "*No Joint Venture.* This Agreement does not create a joint venture . . . ." Written Contract at 18-16; *see, e.g.*, *L&M*, 2010 WL 10078373, at *9 (analyzing parties' intent in evaluating existence of joint venture). In the face of such unambiguous contractual language (to which Plaintiff agreed to be bound), the Court must reject Plaintiff's position that the Parties

6

1 entered into a joint account transaction. *See Van Hook v. Curry*, No. 06-cv-03148-PJH, 2009 WL
2 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in
3 the pleadings, the contents of the exhibits trump the pleadings." (citations omitted)).

4       Plaintiff's reliance on Section 1668 of the California Civil Code to counter the effect of the
5 Written Contract's language is unavailing. *See* Dkt. 52 at 17-18. That statute declares as "against
6 the policy of the law" contracts that "have for their object, directly or indirectly, to exempt anyone
7 from responsibility for his own fraud, or willful injury to the person or property of another, or
8 violation of law, whether willful or negligent." "[T]his provision is meant to prohibit contracts
9 releasing liability for future torts . . . ." *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587
10 n.12 (2d Dist. Div. 3 2009) (emphasis and citation omitted); *see also Castelo v. Xceed Fin. Credit
11 Union*, 91 Cal. App. 5th 777, 789 (2d Dist. Div. 7 2023) ("The purpose of the statute is to prohibit
12 parties from granting themselves licenses to commit future aggravated wrongs . . . ." (citation
13 omitted)). The No Joint Venture provision of the Written Contract does not in any way attempt to
14 insulate or exculpate Defendants from liability. Rather, it simply clarifies the nature of the
15 Parties' contractual relationship. Section 1668, therefore, is inapplicable.

16       Plaintiff also alleges that he "was told from the outset of the Oral Contract . . . that all three
17 parties (Plaintiff, Aptos and Driscoll's) would participate and work together to get the
18 Strawberries planted, grown, harvested, marketed and sold." *See* SAC ¶ 16. Even were the Court
19 to credit this conclusory assertion, it would, at best, constitute a term of the Oral Contract. But as
20 the Court explained in the FAC Order, the Written Contract superseded the Oral Contract, and
21 Plaintiff cannot base a claim on the superseded Oral Contract. *See* FAC Order at 10-11.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### B. Plaintiff's PACA Claim Fails

With Plaintiff's joint-account-transaction allegations nullified as insufficiently pled, the balance of the SAC reads much the same as the FAC. Accordingly, for the same reasons that Plaintiff failed to state a PACA claim in the FAC, he fails to state a PACA claim in the SAC: "The relevant provision of the PACA does not apply to Aptos, and no agreement exists that may form the necessary contractual link to Driscoll's." *Id.* at 13. The Court, therefore, incorporates by reference its prior analysis into this Order. *See id.* at 5-13; *see, e.g.*, *Paciga v. Invuity, Inc.*, No. 17-cv-01005-JSW, 2020 WL 13179747, at *1-2 (N.D. Cal. Nov. 24, 2020) ("Because the minor amendments in this last version of the complaint fail to address the Court's earlier concerns and reasons to dismiss the matter, the Court again finds that it must dismiss the complaint. . . . The Court does not find it necessary to repeat its earlier analyses . . . . The same legal analysis performed by this Court twice before yields the same result.").

Plaintiff also includes some non-joint-account-transaction allegations in the SAC in an attempt to bolster his PACA claim, but those new allegations fail to cure the fundamental deficiencies of his PACA claim.

**New Allegation One:** The Court held in the FAC Order that Plaintiff did not sufficiently allege the existence of a principal-agent relationship between Driscoll's and Aptos, which supported the Court's conclusion that the at-issue provision of the PACA does not apply to Aptos. *See* FAC Order at 7-8. Plaintiff now alleges that, "pursuant to the express terms of the [Oral Contract and Written Contract,] . . . Driscoll's authorized and required Aptos" to transact with Plaintiff on the terms of the Written Contract. *See* SAC ¶ 8. But this allegation merely assumes a conclusion—because Aptos entered into an agreement with Plaintiff on certain terms, Aptos did so under authority from Driscoll's. Plaintiff offers no facts in support of its allegation that Driscoll's "authorized and required" Aptos to perform under the Written Contract on Driscoll's behalf, and nothing in the Written Contract expressly authorizes Aptos to do so. And even if the Oral Contract conferred such authority on Aptos, as explained in the FAC Order, Plaintiff cannot bring a claim based on the terms of the superseded Oral Contract. *See* FAC Order at 9-11.

**New Allegation Two:** The Court held in the FAC Order that Plaintiff did not sufficiently

allege that Driscoll's was a party to the Written Contract, which supported the Court's conclusion that no contractual link between Plaintiff and Driscoll's necessary for PACA liability exists. *See id.* at 11-13. Plaintiff now alleges, albeit tacitly, that the "General Provisions" section of the Written Contract actually constitutes a standalone contract to which Driscoll's was a party. *See* SAC ¶ 43. The Court rejects this assertion for two reasons.

***First***, the General Provisions section contains all the indicia of a section of the Written Contract as opposed to a separate agreement:

- It is appended to the Written Contract.
- It contains no preamble, recitals, date or signatures.
- It uses terms defined in the Written Contract (*e.g.*, "Farmer," "Sublicensor") without defining those terms itself.
- It references the patent sub-license encompassed by the Written Contract. *See* Written Contract at 18-7 ("As partial consideration for licensing the right for the use of Patent Owner's Plants . . . .").

The Court must draw <u>reasonable</u> inferences in favor of Plaintiff under Rule 12(b)(6); it need not abandon reason altogether. *See Khoja*, 899 F.3d at 1008 ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (citation omitted)).

***Second***, in the FAC, Plaintiff treated the General Provisions section of the Written Contract as a part of the Written Contract:

- "An exhibit to the Patent Sublicense sets forth 'General Provisions' . . . ." FAC ¶ 40.
- "The General Provisions of the Patent Sublicense . . . ." *Id.* ¶¶ 42-44.

"While the Court must accept as true all material allegations in a complaint, the Court is not required to accept as true allegations in an amended complaint that contradict allegations made in an earlier complaint, and may strike those inconsistent allegations." *Kennedy Funding, Inc. v. Chapman*, No. 09-cv-01957-RS, 2010 WL 2528729, at *4 (N.D. Cal. June 18, 2010).

**New Allegation Three:** One of the reasons the Court held in the FAC Order that Plaintiff did not sufficiently allege that Driscoll's was a party to the Written Contract was that the Written

9

Contract identified Driscoll's as a third-party beneficiary under the agreement: "The Patent Owner shall be considered a third-party beneficiary of this Agreement as applicable." Written Contract at 18-7; *see also* FAC Order at 11-13. Plaintiff now alleges that "[i]t is unclear from the [Written Contract] whether Driscoll's itself is the 'Patent Owner'" that the agreement identifies as a third-party beneficiary, because the agreement does not define the term Patent Owner. *See* SAC ¶ 44. However, it is clear that Patent Owner refers to Driscoll's:

- The recitals to the Written Contract explain that Aptos has a license to grow strawberries patented by Driscoll's. *See* Written Contract at 18-1.
- In a section titled "Driscoll's Requirements," the agreement explains that "Patent Owner requires" the payment of certain fees. *See id.* at 18-7.
- Plaintiff himself confirms in the SAC that Aptos solicited him "to grow Driscoll's patented strawberry varieties." *See* SAC ¶ 11.

### C. The Court Will Not Exercise Supplemental Jurisdiction Over Plaintiff's State-Law Claims

Subject-matter jurisdiction in this action emanates solely from Plaintiff's federal PACA claim, which permits the Court to exercise federal-question jurisdiction. *See* 28 U.S.C. § 1331; *see also* SAC ¶ 1. Because the Court dismisses the PACA claim, it declines to exercise supplemental jurisdiction over Plaintiff's remaining claims, all of which arise under state law. *See* 28 U.S.C. § 1367(c)(3); *see also Choker v. Pet Emergency Clinic, P.S.*, No. 22-35650, 2023 WL 8888632, at *2 (9th Cir. Dec. 26, 2023) (district court need not provide explanation for declining to exercise supplemental jurisdiction beyond citing Section 1367(c)(3)). Rule 12(b)(1), therefore, compels dismissal of Plaintiff's state-law claims. *See, e.g., Kolstad v. Cnty. of Amador*, No. 13-cv-01279-WBS, 2014 WL 556009, at *4 (E.D. Cal. Feb. 12, 2014).

///
///
///
///
///

### D. Further Amendment Is Futile

The Court will not grant Plaintiff leave to amend his pleading because it does not believe he can fix the deficiencies identified in this Order and the FAC Order. Indeed, in response to the Court's dismissal of the FAC, Plaintiff re-submitted substantially the same pleading. His new allegations do little to address the shortcomings that compelled dismissal the first time around. Simply put, it does not appear Plaintiff can successfully re-style his state-law claims into a federal cause of action. Further amendment, therefore, would be futile. *See, e.g.*, *Snapkeys, Ltd. v. Google LLC*, No. 19-cv-02658-LHK, 2020 WL 6381354, at *7 (N.D. Cal. Oct. 30, 2020) (dismissing claim without leave to amend where, *inter alia*, plaintiff "has already failed multiple times to adequately allege a . . . claim"); *Martin v. CSAA Ins. Exch.*, No. 17-cv-04066- MEJ, 2018 WL 1242069, at *4 (N.D. Cal. Mar. 8, 2018) (denying request for leave to amend complaint where, *inter alia*, "Plaintiffs repeatedly failed to cure deficiencies in their pleading").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motions and **DISMISSES** the SAC **WITHOUT LEAVE TO AMEND**.

**SO ORDERED.**

Dated: March 11, 2024

SUSAN VAN KEULEN
United States Magistrate Judge

11